UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHANDRA MARTIN-FRANCIS,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration,<br><br>                    Defendant. | NO:  1:14-CV-3190-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 14; 18).  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  *Id.* § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  *Id.* § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  *Id.* § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  *Id.* § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  *Id.* § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id.* § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

1    work "exists in significant numbers in the national economy."  20 C.F.R.

2    § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

3                              **ALJ'S FINDINGS**

4            Plaintiff protectively filed an application for supplemental security income

5    benefits on May 6, 2008, alleging a disability onset date of December 10, 2006.

6    Tr. 263-66.  Plaintiff's claim was denied initially and on reconsideration.  Tr. 136-

7    40, 144-47.  Plaintiff requested a hearing, Tr. 148-51, and an administrative law

8    judge ("ALJ") held hearings on April 22, 2010, and January 21, 2011.  Tr. 72-98,

9    99-109.  The ALJ issued a decision on February 11, 2011, finding that Plaintiff

10   was not disabled under the Act.  Tr. 112-28.  Plaintiff appealed, and the Appeals

11   Council remanded the case.  Tr. 129-33.  Pursuant to the remand order, the ALJ

12   held a hearing on April 29, 2013, Tr. 39-71, and issued a decision on May 31,

13   2013,[1] again finding Plaintiff not disabled under the Act.  Tr. 17-38.

14           In the updated decision, the ALJ made the following findings.  At step one,

15   the ALJ found that Plaintiff had not engaged in substantial gainful activity since

16   May 6, 2008, the application date.  Tr. 22.  At step two, the ALJ found that

17   Plaintiff had the following severe impairments: osteoarthritis (mild degenerative

18   changes in the spine), obesity, obstructive sleep apnea, affective disorder, anxiety

19   ───────────────

     [1] The ALJ incorporated the discussion and summary of the evidence in the decision

20   of February 11, 2011, into the final decision.  Tr. 20.

disorder/posttraumatic stress disorder (PTSD), and dependent personality disorder. Tr. 22.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 23.  The ALJ then determined that Plaintiff had the RFC to

> perform medium work as defined in 20 CFR 416.967(c). The claimant is able to remember, understand, and carry out instructions or tasks generally required by occupations with a SVP of 1, 2, 3, or 4. The claimant can have occasional, superficial interaction with the general public. The claimant can have occasional interaction with coworkers and supervisors.

Tr. 24.  At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 32.  At step five, after considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found Plaintiff could perform work existing in significant numbers in the national economy in representative occupations, such as a cleaner, housekeeping, hand packager, cook helper, and industrial cleaner.  Tr. 32-33.  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied her claim on that basis.  Tr. 33.

The Appeals Council denied Plaintiff's request for review on October 8, 2014, Tr. 1-6, making the ALJ's decision the Commissioner's final decision that is subject to judicial review.  42 U.S.C. §§ 405(g), 1383(c)(3);  20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following two issues for review:

(1) Whether the ALJ erred in assessing Plaintiff's credibility; and

(2) Whether the ALJ erred in weighing the opinion evidence of Plaintiff's treatment providers.

ECF No. 14 at 12.

**DISCUSSION**

**A. Adverse Credibility**

Plaintiff faults the ALJ for providing impermissible reasons for rejecting her symptom testimony. ECF No. 14 at 20-26. In support, Plaintiff provides the following arguments: (1) the ALJ, when finding that Plaintiff's pain complaints are not supported by objective evidence, failed to consider how Plaintiff's obesity and depression exacerbated her impairments, *id.* at 20-21; (2) the ALJ faulted Plaintiff for failing to stop smoking, but the record contains no indication that quitting smoking would improve her severe impairments, *id.* at 21-22; (3) the ALJ cited to a few periods of improvement in her symptoms to demonstrate improvement with treatment; however, these treatment notes do not contradict Plaintiff's reported symptoms nor show that she is capable of full-time employment, *id.* at 22-24; and

(4) the ALJ, when finding that Plaintiff's daily activities and social functioning are not consistent with the debilitating mental symptoms alleged, failed to consider the impact of Plaintiff's' psychiatric symptoms, *id.* at 24-26.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  The Ninth Circuit has repeatedly rejected the Commissioner's argument that a lesser standard than "clear and convincing" applies.  *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (rejecting the government's argument that the ALJ need only

1   provide specific reasons for rejecting a claimant's testimony).  "General findings

2   are insufficient; rather, the ALJ must identify what testimony is not credible and

3   what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v.*

4   *Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958

5   (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings

6   sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

7   discredit claimant's testimony.").  In making an adverse credibility determination,

8   the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2)

9   inconsistencies in the claimant's testimony or between h[er] testimony and h[er]

10  conduct; (3) the claimant's daily living activities; (4) the claimant's work record;

11  and (5) testimony from physicians or third parties concerning the nature, severity,

12  and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

13       This Court finds the ALJ provided specific, clear, and convincing reasons

14  supported by substantial evidence for discounting Plaintiff's subjective statements.

15       First, the ALJ found the "longitudinal medical evidence, which reveals, at

16  most, mild findings on physical examinations and imaging[,] do not corroborate

17  the claimant's subjective complaints of physical disability." Tr. 26.  The ALJ

18  found that, although Plaintiff alleged chronic pain in all her joints, her complaints

19  were disproportionate to the benign objective findings, which objective findings

20  the ALJ detailed at length.  Tr. 25-26 (noting that laboratory tests were normal; x-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

rays were unremarkable; and despite obesity, examinations found Plaintiff had a normal gait and posture, normal range of motion throughout all joints and upper and lower extremities, and normal muscle tone and strength).  Although the ALJ cannot reject a claimant's testimony solely because the objective medical evidence does not support the severity of the alleged impairment, inconsistencies between Plaintiff's alleged limitations and objective medical evidence—in addition to the other reasons addressed below—provide a permissible and legitimate reason for discounting Plaintiff's credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Although Plaintiff cites to treatment records to demonstrate that her depression and obesity exacerbated her pain symptoms, the records she cites do not provide objective medical evidence to support such assertion.  Tr. 532 (Dr. Dougherty's psychological evaluation concludes with the finding of "rule out Pain disorder associated with both psychological factors and a medical condition" while opining that "psychological factors may contribute to her pain syndrome."), Tr. 524 (Dr. Udell notes that self-reports of pain mostly relieved by antidepressants). Thus, the ALJ—when considering the inconsistencies between Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

testimony and the *objective* medical evidence presented—did not err when she

considered the alleged effect on Plaintiff's pain caused by her obesity and

successful treatment of her depression (Tr. 25-26, 31).

Second, the ALJ found Plaintiff's testimony less than credible based on her

failure to follow treatment recommendations.  Despite repeated recommendations

by her treatment provider, Dr. Amanda Ryder, to stop smoking, Plaintiff continued

to smoke.  Tr. 378 (treatment notes documenting Plaintiff's smoking habit and the

doctor's encouragement to quit), 515 (treatment notes document Plaintiff's

continued smoking habit and provider's second recommendation to quit).  Because

an ALJ may consider a claimant's unexplained or inadequately explained failure to

follow a prescribed course of treatment in assessing Plaintiff's testimony, the ALJ

did not err here.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Although Plaintiff contends that her smoking habit is not relevant to her severe

impairments, the ALJ reasonably found this recommendation within Dr. Ryder's

treatment notes relevant when assessing Plaintiff's credibility, a finding this Court

declines to second guess.  *See Moncada v. Chater*, 60 F.3d 521, 525 (9th Cir.

1995) ("We do not retry the case or alter credibility determinations and factual

findings where the evidence is susceptible of more than one rational

interpretation.").

1    Third, the ALJ found that Plaintiff's mental symptoms improved with

2    treatment.  Tr. 26-27.  In making this finding, the ALJ extensively detailed and

3    cited Plaintiff's treatment records, spanning from December 2007 through October

4    2012, which records demonstrated that Plaintiff's mental functioning improved and

5    remained stable on a medication regimen.  Tr. 26-27; *see* Tr. 388 ("[Claimant] has

6    been on the medications for about a month, and feels that it has been helping quite

7    a bit with her symptoms and stress."), Tr. 391 (noting that claimant reported

8    medications helped with depressive symptoms), Tr. 437 (noting claimant is "doing

9    well on the medications"), Tr. 438 (noting that claimant is happy with current

10   treatment regime), Tr. 443 ("[Claimant] feels that her medications have been

11   helping quite a bit with her symptoms of depression and stress."), Tr. 444 (noting

12   that claimant is happy with current regime), Tr. 502 (same), Tr. 527 (noting that

13   antidepressants help with depression), Tr. 547 (noting that mental impairments

14   improved with medication), Tr. 550 (noting that claimant still feels depressed on

15   medication, but less so).  Although Plaintiff faults the ALJ for not considering

16   these records in the context of Plaintiff's overall health, she has failed to

17   demonstrate that the records cited by the ALJ do not constitute examples of

18   broader development.  *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014)

19   ("While ALJs obviously must rely on examples to show why they do not believe

20   that a claimant is credible, the data points they choose must *in fact* constitute

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

examples of a broader development to satisfy the applicable 'clear and convincing' standard.").  Because this Court finds the cited records demonstrate examples of a broader development, the ALJ provided another clear and convincing reason for discounting Plaintiff's credibility.

Finally, the ALJ found inconsistencies between Plaintiff's alleged limitations and her actual activity.  For instance, although Plaintiff testified to problems with anxiety, the record showed that she "retains fairly intact social functioning."  Tr. 27.  The ALJ found that Plaintiff reported getting along with coworkers, supervisors, family, friends, and neighbors; socializing with her in-laws, brother and one friend; and interacting cooperatively with providers and examiners.  Tr. 27-28.  Further, the ALJ found Plaintiff engages in activities that demonstrate greater functioning than alleged: she is independent in her daily activities, including driving, shopping, caring for her personal needs, cooking, and performing household chores; she plays the clarinet, plays video games, and watches television; and she spends her days taking classes online and caring for her infant.  Tr. 28.  Specifically, the ALJ found Plaintiff's "ability to be a single parent to such a young child suggest[s] an ability to handle more than just routine stressors and responsibilities and is inconsistent with her claims of disability." Tr. 28.

1    Although inconsistencies between a claimant's self-reports and daily

2    activities can provide a permissible basis for an adverse credibility determination,

3    Plaintiff rightfully faults the ALJ concluding that these activities are inconsistent

4    with the impairments described in her testimony and ignoring other evidence in the

5    record showing that Plaintiff's impairments do interfere with her daily functioning.

6    *See Garrison*, 759 F.3d at 1016 (holding that the ALJ erred in finding a claimant's

7    daily activities inconsistent with her pain-related impairments where the ALJ failed

8    to recognize the claimant was heavily assisted by her mother and must often rest

9    for several hours after performing her activities).  For instance, the record

10   demonstrates that Plaintiff has difficulty doing things alone and relies on the

11   support of her children. Tr. 56, 528, 664.  Further, Plaintiff is able to complete

12   chores but only by taking frequent breaks.  Tr. 318.

13        Nonetheless, in light of all the other permissible reasons the ALJ provided

14   for discrediting Plaintiff's testimony, this Court does not find the ALJ has

15   committed reversible error.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

16   1190, 1197 (9th Cir. 2004) (holding that any error that ALJ committed in asserting

17   one impermissible reason for claimant's lack of credibility did not negate the

18   validity of the ALJ's ultimate conclusion that the claimant's testimony was not

19   credible).  In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

20   several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

1    **B. Medical Opinions**

2    Plaintiff also faults the ALJ for improperly rejecting the opinions of her

3    treatment providers.  ECF No. 14 at 12-19.  Specifically, Plaintiff offers the

4    following arguments: (1) the ALJ, in rejecting the opinion of Dr. Udell,

5    impermissibly relied on only one reason—that Dr. Udell's opinion was not

6    supported by medical evidence, *id.* at 13-15; (2) the ALJ failed to address the

7    opinion of Dr. Smith, *id.* at 16-17; and (3) the ALJ relied on impermissible reasons

8    for rejecting the opinion of Ms. Elsner, MSW, *id.* at 17-19.

9    There are three types of physicians: "(1) those who treat the claimant

10    (treating physicians); (2) those who examine but do not treat the claimant

11    (examining physicians); and (3) those who neither examine nor treat the claimant

12    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

13    *Holohan*, 246 F.3d at 1201-02 (citations omitted).  Generally, a treating

14    physician's opinion carries more weight than an examining physician's, and an

15    examining physician's opinion carries more weight than a reviewing physician's.

16    *Id.*  In addition, the regulations give more weight to opinions that are explained

17    than to those that are not, and to the opinions of specialists concerning matters

18    relating to their specialty over that of nonspecialists.  *Id.* (citations omitted).

19    If a treating or examining physician's opinion is uncontradicted, an ALJ may

20    reject it only by offering "clear and convincing reasons that are supported by

1    substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

2    "However, the ALJ need not accept the opinion of any physician, including a

3    treating physician, if that opinion is brief, conclusory and inadequately supported

4    by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).  "If

5    a treating or examining doctor's opinion is contradicted by another doctor's

6    opinion, an ALJ may only reject it by providing specific and legitimate reasons

7    that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing

8    *Lester*, 81 F.3d at 830-31).

9        "Where an ALJ does not explicitly reject a medical opinion or set forth

10   specific, legitimate reasons for crediting one medical opinion over another, he

11   errs." *Garrison*, 759 F.3d at 1012.  "In other words, an ALJ errs when he rejects a

12   medical opinion or assigns it little weight while doing nothing more than ignoring

13   it, asserting without explanation that another medical opinion is more persuasive,

14   or criticizing it with boilerplate language that fails to offer a substantive basis for

15   his conclusion." *Id.* at 1012-13.  That being said, the ALJ is not required to recite

16   any magic words to properly reject a medical opinion.  *Magallanes v. Bowen*, 881

17   F.2d 747, 755 (9th Cir. 1989) (holding that the Court may draw reasonable

18   inferences when appropriate).  "An ALJ can satisfy the 'substantial evidence'

19   requirement by 'setting out a detailed and thorough summary of the facts and

20   conflicting clinical evidence, stating his interpretation thereof, and making

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### 1. Mindy Udell, M.D.

Plaintiff first faults the ALJ for rejecting the opinion of Dr. Udell, a treating physician, who completed a DSHS form in April 2010 and opined that Plaintiff is limited to 11 to 20 hours of sedentary work per week.  ECF No. 14 at 13-15; Tr. 588-89.  Plaintiff argues, citing to SSR 96-70, that the ALJ impermissibly rejected Dr. Udell's opinion solely because it was inconsistent with the objective medical evidence.  ECF No. 14 at 13-15.

The ALJ gave "no weight" to Dr. Udell's opinion for one reason: Dr. Udell's proposed restrictions "are extreme and disproportionate to the essentially unremarkable longitudinal objective findings."  Tr. 29.  In support, the ALJ highlighted the following:

> [X]-rays of the thoracic and lumbar spine reveal evidence of only mild degenerative disc disease at T10-11, T11-12, and l4-5.  Imaging was negative at all other levels (18F10, 13). On physical examinations, the claimant has consistently demonstrated near full range of motion in the lumbar spine, including being able to forward flex so that her fingers touch her toes or the ground. She has had normal neurologic functioning, characterized by intact gait, sensation, and motor strength.

Tr. 29.  Instead, the ALJ afforded great weight to the opinions of Drs. Ho and Platter and concluded that Plaintiff retains the functional capacity to perform

1   medium exertional work.  Tr. 28-29.  Dr. Ho, a physician who conducted a

2   comprehensive examination of Plaintiff, opined that Plaintiff could lift and carry

3   50 pounds occasionally and 25 pounds frequently and would have no standing,

4   walking, sitting, or bending restrictions.  Tr. 446-51.  The ALJ found this opinion

5   consistent with the medical evidence.  Tr. 29.  Dr. Platter, a State agency medical

6   consultant, opined that Plaintiff could perform medium work.  Tr. 477-85.  The

7   ALJ also found this opinion consistent with the medical evidence and the opinion

8   of Dr. Ho. Tr. 29.

9        This Court finds the ALJ properly rejected the opinion of Dr. Udell.

10  Because Dr. Udell's opinion was contradicted by the opinions of Drs. Ho and

11  Platter, the ALJ need only have provided "specific and legitimate reasons that are

12  supported by substantial evidence."  *See Bayliss*, 427 F.3d at 1216.  As found by

13  the ALJ, Dr. Udell's opinion was unsupported by the objective medical evidence

14  and medical findings.  Because this reason provides a specific and legitimate

15  reason for rejecting an opinion of a treating physician, *see Tonapetyan v. Halter*,

16  242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical

17  opinions, an ALJ need not accept a treating physician's opinion that is conclusory

18

19

20

1   and brief and unsupported by clinical findings."), the ALJ provided sufficient

2   reasoning supported by substantial evidence for rejecting Dr. Udell's opinion.[2]

3       Although Plaintiff again faults the ALJ for ignoring the alleged aggravating

4   effect that Plaintiff's obesity and depression had on her pain symptoms, the

5   treatment records cited by Plaintiff do not provide the necessary support for her

6   argument.  Regarding her depression, Plaintiff does not cite to any record evidence

7   demonstrating that her depression aggravates her pain symptoms to such a degree

8   as to support Dr. Udell's opined limitations.  The record evidence merely

9   demonstrates that her depression may contribute to her symptoms of pain.  *See* Tr.

10  532, 524.  Regarding her obesity, Plaintiff has cited to no evidence that her obesity

11  caused any additional physical limitations that the ALJ failed to consider.

12  Although obesity can cause limitation of function, *see* SSR 02-10p, 2002 WL

13  34686281, without citation to evidence in the record, this Court is unable to find

14  that the ALJ failed to address any additional physical limitations to which

15  Plaintiff's obesity contributed.  The ALJ did acknowledge that Plaintiff is obese

16  _____

[2] Plaintiff cites to SSR 96-7p, 1996 WL 374186, for the proposition that an ALJ

17  may not disregard allegations regarding the intensity and persistence of pain solely

18  because they are not substantiated by objective medical evidence.  However, this

19  ruling concerns the assessment of a claimant's credibility when evaluating self-

20  reported symptoms and is thus inapplicable.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

and suffers from mild to moderate sleep apnea as a result—a condition which has

improved with the use of a CPAP, or continuous positive airway pressure, device;

however, in considering any physical limitations, the ALJ found that, despite

Plaintiffs' obesity, Plaintiff's "physical examinations consistently show normal

gait, generally full range of motion in her joints, and 5/5 motor strength and intact

sensation throughout her upper and lower extremities." Tr. 26. Accordingly, this

Court does not find error.

### 2.  Gayle Smith, D.O.

Plaintiff also faults the ALJ for failing to address the opinion of treating

physician, Dr. Smith, who completed a DSHS form in April 2010 and opined that

Plaintiff is limited to 11 to 20 hours per week of no greater than light work. ECF

No. 14 at 16-17; Tr. 594-95. Citing to SSR 96-8p, Plaintiff asserts that the ALJ

"must always consider and address medical source opinions." ECF No. 14 at 16.

As Plaintiff correctly notes, the ALJ failed to address Dr. Smith's opinion,

which the government seemingly concedes constitutes error. ECF No. 18 at 9-11;

*see Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a

medical opinion or set forth specific, legitimate reasons for crediting one medical

opinion over another, he errs."). Instead, the government contends the error was

harmless. ECF No. 18 at 9 (citing *Molina*, 674 F.3d at 1115).

1    Thus, the issue becomes whether the ALJ's failure to address Dr. Smith's

2  opinion constitutes harmful, as opposed to harmless, error.  As recently held by the

3  Ninth Circuit, the harmless error doctrine applies to an ALJ's failure to mention a

4  treating source's medical opinion.  *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th

5  Cir. 2015).  "[W]here the magnitude of an ALJ error is more significant, then the

6  degree of certainty of harmlessness must also be heightened before an error can be

7  determined to be harmless."  *Id.* at 1173.  "In order words, the more serious the

8  ALJ's error, the more difficult it should be to show the error was harmless."  *Id.*

9    This Court finds the ALJ's failure to address Dr. Smith's opinion, although

10  an error, is harmless in light of the ALJ's unreserved rejection of Dr. Udell's

11  similar opinion.  As stated above, the ALJ rejected Dr. Udell's April 2010 DHSH

12  form opinion that Plaintiff would be limited to 11 to 20 hours of sedentary work

13  per week because it was unsupported by objective medical evidence and

14  contradicted by other opinion evidence.  Instead, the ALJ relied on the

15  contradictory opinions of Drs. Ho and Platter, which the ALJ found were

16  consistent with the overall medical evidence.   It is reasonable to find that the

17  ALJ's failure to address the opinion of Dr. Smith is harmless because the ALJ

18  undoubtedly would have rejected Dr. Smith's opinion—similarly opining in April

19  2010 that Plaintiff would be limited to 11 to 20 hours of work per week, which

20  opinion was issued on a DHSH form—as being similarly unsupported by evidence

1  in the record.  *See Molina*, 674 F.3d at 1121-22 ("An ALJ's failure to comment

2  upon lay witness testimony is harmless where 'the same evidence that the ALJ

3  referred to in discrediting [the claimant's claims also discredits [the lay witness']

4  claims.").   And as Defendant notes, the ability to do light work generally

5  encompasses the ability to do sedentary work, ECF No. 18 at 10 (citing 20 C.F.R.

6  § 416.967(b)); thus, there is no reason to think the ALJ would have treated the two

7  opinions differently.  Although the Court acknowledges that the magnitude of the

8  ALJ's error in failing to mention a treating physician's opinion is high, the degree

9  of harmlessness outweighs any harm given the specific facts here.  The ALJ's

10  failure to address Dr. Smith's opinion, although an error, is harmless because it is

11  "inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at

12  1115.  Accordingly, this Court does not find reversible error.

13  **3.  Sandra Elsner, MSW**

14      Finally, Plaintiff faults the ALJ for improperly rejecting the opinion of Ms.

15  Elsner, a social worker, who, in December 2008, completed a DSHS form and

16  opined that Plaintiff would be unable to work because of her anxiety, overly-

17  emotional state, and the fact that she is easily overwhelmed.  ECF No. 14 at 17-19;

18  *see* Tr. 581.

19

20

1    The ALJ gave "no weight" to Ms. Elsner's opinion.[3] Tr. 30.  First, the ALJ

2    noted that Ms. Elsner is not an acceptable medical source.  Tr. 30.  Instead, the

3    ALJ afforded greater weight to the contradictory opinions of Drs. Billings and

4    Dougherty, both of whom are acceptable medical sources.  Tr. 30.  Second, the

5    ALJ—noting that Ms. Elsner did not cite to any examination findings or treatment

6    records—found that Ms. Elsner's opinion was "based solely on [Plaintiff's] report

7    that she is anxious and overly emotional."  Tr. 30.   Third, the ALJ found that Ms.

8    Elsner's opinion was inconsistent with Plaintiff's daily activities. Tr. 30.  Finally,

9    the ALJ found Ms. Elsner's opinion was controverted by the mild radiographic and

10   physical examination findings. Tr. 30.

11       Medical sources such as social workers and therapists, are not "acceptable

12   medical sources;" rather, these sources are more appropriately characterized as

13   "other sources" and their opinions may be properly discounted if the ALJ provides

14   "germane reasons" for doing so.  *Molina*, 674 F.3d at 1111.  Such "other source"

15   opinions "must be evaluated on the basis of their qualifications, whether their

16   opinions are consistent with the record evidence, the evidence provided in support

17   of their opinions, and whether the source has a specialty or area of expertise related

18   to the individual's impairment."  SSR 06-03p, 2006 WL 2329939, at * 4.

19   [3] The ALJ mistakenly refers to Ms. Elsner as Ms. Edner; however, the ALJ

20   correctly cites to Ms. Elsner's December 2008 opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

1        This Court finds the ALJ provided germane reasons for rejecting the

2   opinions of Ms. Elsner.  First, the ALJ reasonably afforded greater weight to the

3   opinions of Drs. Billing and Doughtery, both acceptable medical sources.  SSR 06-

4   03p, 2006 WL 2329939, at *5 ("The fact that a medical opinion is from an

5   'acceptable medical source' is a factor that may justify giving that opinion greater

6   weight than an opinion from a medical source who is not an 'acceptable medical

7   source' because, as we previously indicated . . . 'acceptable medical sources' 'are

8   the most qualified health care professionals.'").

9        Second, noting that Ms. Elsner's report did not cite to any examination

10  findings or treatment records, the ALJ properly rejected the opinion as it was

11  largely based on Plaintiff's subjective reporting.  *See Ghanim*, 763 F.3d at 1162

12  ("If a treating provider's opinions are based 'to a large extent' on an applicant's

13  self-reports and not on clinical evidence, and the ALJ finds the applicant not

14  credible, the ALJ may discount the treating provider's opinion.").

15       Finally, and relatedly, the ALJ found Ms. Elsner's opinion unsupported by

16  clinical findings.  *Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating

17  physician's' opinions that are conclusory, brief, and unsupported by the record as a

18  whole . . . or by objective medical findings.").

19       Accordingly, because the ALJ provided germane reasons for rejecting the

20  opinion of Ms. Elsner, this Court does not find error.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

**IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 18) is

       **GRANTED**.

The District Court Executive is directed to file this Order, enter

**JUDGMENT** for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** September 22, 2015.



                    THOMAS O. RICE
             United States District Judge